UNITED STATES DISTRICT COURT
                              FOR THE
                       DISTRICT OF VERMONT

RAYMOND KNUTSEN AND           :
MARILYNN KNUTSEN,             :
                              :
          Plaintiffs          :
                              :
     v.                       :      Case No. 2:18-cv-88-wks
                              :
                              :
STATE FARM FIRE AND           :
CASUALTY COMPANY,             :
                              :
          Defendant.          :

## OPINION AND ORDER

Plaintiffs Raymond and Marilynn Knutsen brought action against Defendant State Farm Fire and Casualty Company for breach of its duty to defend under Plaintiffs' homeowner's insurance policy. Now before the Court is Defendant's Motion for Summary Judgment. For the reasons set forth below, Defendant's Motion for Summary Judgment is **granted**.

## Background

### I. Undisputed Facts

Since at least January 2015, Plaintiffs Raymond and Marilynn Knutsen (collectively, "the Knutsens") have had a homeowners insurance policy ("the Policy") with State Farm Fire and Casualty Company ("State Farm"). ECF 16-1 at 1.

In April, 2015, Karen Cegalis ("Cegalis") filed a lawsuit against the Knutsens, claiming that the Knutsens "conspired to

create a campaign to cause severe estrangement of Leif Cegalis from his mother Karen Cegalis." ECF 16-3 at 1-2, ECF 16-1 at 2. Leif Cegalis is the child of Raymond Knutsen and Karen Cegalis. ECF 16-3 at 1. Cegalis' Complaint alleges that, inter alia, the Knutsens prevented contact between her and her son, violated Court Orders to not engage in discussing their Family Court case with Leif Cegalis, brainwashed Leif Cegalis against Karen Cegalis, recklessly or knowingly made defamatory statements about Karen Cegalis to Leif Cegalis, tortuously interfered with Karen Cegalis' custodial rights, and "engaged in a crusade to prosecute Karen Cegalis for unsubstantiated allegations of abuse towards Leif Cegalis." ECF 16-3 at 2. The Complaint alleged four separate claims: Negligence, Breach of Good Faith and Fair Dealing, Intentional Infliction of Emotional Distress, and Intentional Torts. ECF 16-3. In terms of damages, Karen Cegalis sought "damages in an amount sufficient to compensate her for her damages including but not limited to past, present and future damages for physical pain, suffering [sic] emotional damages, economic damages for the cost of litigating false accusations, counseling costs and other equivalent out of pocket expenses." ECF 16-3 at 5. Damages are for "compensation of medical bills past, present and future" and "for pain and suffering past, present and future." *Id*.

On September 23, 2015, the Knutsens contacted State Farm and requested that State Farm provide insurance coverage for the claims asserted against them in the Cegalis Complaint. ECF 16-1 at 2. State Farm replied on October 28, 2015, denying insurance coverage for the claims. *Id*. State Farm determined that the claims in the Cegalis Complaint are not covered by the Policy. ECF 16-4 at 1. The Policy provides personal liability coverage to the Knutsens as follows:

> If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:
>
> 1. Pay up to our limit of liability for the damages for which the insured is legally liable; and
>
> 2. Provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.

ECF 16-2 at 24. The Policy defines "bodily injury" as follows:

> 1. "Bodily injury" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom."
>
> Bodily injury does not include:

>   a. Any of the following which are
>   communicable: disease, bacteria,
>   parasite, virus, or other organism, any
>   of which are transmitted by any insured
>   to any other person;
>
>   b. The exposure to any such disease,
>   bacteria, parasite, virus, or other
>   organism by any insured to any other
>   person; or
>
>   c. Emotional distress, mental anguish,
>   humiliation, mental distress, mental
>   injury, or any similar injury unless it
>   arises out of actual physical injury to
>   some person.

*Id*. at 10. Additionally, the Policy contains the following coverage exclusion:

>   Coverage L [Personal Liability] and Coverage
>   M [Medical Payments to Others] do not apply
>   to:
>
>   a. bodily injury or property damages:
>
>   >   (1) which is either expected or intended by
>   >   the insured; or
>   >   (2) which is the result of willful or
>   >   malicious acts of the insured.

*Id* at 25.

Trial for the Cegalis lawsuit began on June 5, 2017. ECF 16-1 at 2. At trial, Cegalis described how the alleged acts by the Knutsens were affecting her: "I couldn't concentrate . . . I was starting to have physical symptoms, tingling and numbness in my fingers and just this brain fog." ECF 16-5 at 3. Cegalis added that she also had "trouble sleeping." ECF 16-5 at 5.

On July 5, 2017, the trial judge announced the close of evidence and gave the jury closing instructions. *Id*. The instructions attached to the Knutsen Complaint in Rutland Superior Court are not signed by the trial judge. *Id*. The instructions for the Negligence claim instruct jurors that:

> To prove that the Knutsens were negligent Ms. Cegalis must prove all the following:
> (1) That the Knutsens had a duty to Ms. Cegalis; and
> (2) They failed to use reasonable care in discharging that duty; and
> (3) The Knutsen's [sic] failure to use reasonable care caused physical injury to Ms. Cegalis.

ECF 16-6 at 3. The instructions further provide that "[i]f you find that the Knutsens breached a duty toward Ms. Cegalis, then you must decide whether Ms. Cegalis has proved that the breach caused physical harm to her." *Id*.

The jury returned a verdict for Cegalis and eventually awarded her $500 in damages: $499 for negligence and $1 for intentional infliction of emotional distress. ECF16-1 at 3. On October 7, 2017, the court ordered that the Cegalis lawsuit be re-tried. *Id*. On November 1, 2017, the Knutsens' attorney wrote to State Farm, renewing their claim for insurance coverage. *Id*. On January 19, 2018, State Farm wrote back to the Knutsens, reiterating State Farm's position that there is no coverage for the Cegalis claims. *Id*.

On April 2, 2018, Cegalis filed an Amended Complaint. ECF 16-1 at 4. The Amended Complaint is identical to the original Complaint except that Count IV is now labeled 'Defamation' instead of 'Intentional Torts.' *Id*. That same month, the Knutsens renewed their request for insurance coverage, and State Farm again replied that there was no insurance coverage for the disputed claims. *Id*.

State Farm now moves for summary judgment arguing that it has no duty to defend the Cegalis lawsuit because the Cegalis Complaint does not allege that Cegalis sustained "bodily injury" as that term is defined in the Policy. ECF 16 at 6. State Farm also argues that it has no duty to defend the Cegalis lawsuit because the Cegalis Complaint alleges that the harm to Cegalis was "expected or intended" or was "willful and malicious." *Id*. at 13.

## Discussion

**1. Summary Judgment Standard**

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making a determination on summary judgment, the court must construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d

732, 740 (2d Cir. 2010). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has discharged its burden the opposing party must set out specific facts showing a genuine issue of material fact for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The moving party bears the burden of establishing that there are no factual issues and that they are entitled to judgment as a matter of law. *Battery Steamship Corporation v. Refineria Panama S.A.*, 513 F.2d 735, 738 (2d Cir. 1975).

### 2. Choice of Law

Jurisdiction in this case is based on diversity of the parties. "It is well established that federal courts determine governing law in diversity actions by looking to choice of law principles in the forum state." *Evergreen Bank, N.A. v. Sullivan*, 980 F. Supp. 747, 750 (D. Vt. 1997). When contractual parties have not specified the state law to be applied in a given case, Vermont uses the test laid out in Restatement (Second) Conflict of Laws § 188 (the "Restatement") to determine which state has the most significant relationship to the transaction and the parties. *Id.; see also McKinnon v. F.H. Morgan & Co.*, 750 A.2d 1026, 1028 (Vt. 2000) ("This Court has adopted the Restatement (Second) of Conflicts for choice-of-law

questions in both tort and contract cases."). The Restatement considers five factors in determining the law applicable including: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation, and place of business to the parties. Restatement (Second) Conflict of Laws § 188.

Here, the balance of factors weighs heavily in Vermont's favor. The Knutsens are residents of Castleton, Vermont and State Farm has its principal place of business in Illinois. ECF 1 at 1. The contract at issue is a Homeowners Insurance Policy purchased by the Knutsens from State Farm. The Knutsens are alleging that State Farm has a duty, under this contract, to defend them in a lawsuit in Vermont state court. The alleged acts which gave rise to the state court lawsuit occurred in Vermont. Vermont has the most significant relationship to the transaction and the parties, and thus Vermont state law applies.

### 3. State Farm Has No Duty to Defend or Indemnify the Knutsens in the Cegalis Lawsuit

An insurer has a duty to defend "whenever it is clear that the claim against the insured might be of the type covered by the policy." *Garneau v. Curtis & Bedell, Inc.*, 158 Vt. 363, 366, 610 A.2d 132, 134 (1992). This duty does not extend, however, to

circumstances where, as a matter of law, there is no duty to indemnify. *Id*. Thus, the issue in this case is whether the Cegalis Complaint contains claims which are potentially or arguably within the Policy, requiring a duty to defend from State Farm. More specifically, the question is whether Cegalis' claims of emotional distress fall within the Policy's definition of "bodily injury," which she argues is the basis for State Farm's duty to defend.

When looking at unsettled areas of state law, a federal court must "carefully . . . predict how the state's highest court would resolve the uncertainty or ambiguity." *Maska U.S., Inc. v. Kansa General Ins. Co.*, 198 F.3 74, 78 (2d Cir. 1999). The Court may also "consider 'decisions in other jurisdictions on the same or analogous issues.'" *Id*. (quoting *Leon's Bakery, Inc v. Grinnell Corp.*, 990 F.2d 44, 48 (2d Cir. 1993)).

The Vermont Supreme Court has not spoken on the definition of "bodily injury" in regards to the Policy, or addressed whether the definition of "bodily injury" in homeowner's insurance extends to emotional distress. Outside the context of homeowner's insurance, the Vermont Supreme Court has stated that "[a]bsent physical contact, one may recover for negligently caused emotional distress only when the distress is 'accompanied by substantial bodily injury or sickness.'" *Fitzgerald v. Congleton*, 155 Vt. 283, 292, 583 A.2d 595 (1990) (quoting

9

*Vaillancourt v. Medical Ctr. Hosp.*, 139 Vt. 138, 143, 425 A.2d 92 (1980)). While not dispositive, this clear opinion by Vermont's highest court provides strong guidance on how it would view damages for emotional distress unaccompanied by considerable bodily injury in this instance.

Additionally, the Vermont Supreme Court has stated that:

> Rules and categories are tempting devices for arriving at automatic answers. Sometimes the distinguishing qualities of the classifications coincide with the essential differences between situations. And sometimes they do not. Sometimes the categories carry with them characteristics of their own which introduce deceptive or irrelevant distinctions into a decision, leading us away from the substance of an inquiry.
>
> It is, therefore usually best for courts to meet the issues completely on a case by case basis, leaving classification to others, limiting the use of general propositions to those that are essential to an understanding of the manner in which the court resolved the questions involved, and the way it will approach others like it. This is the genius of our common law system, deriving the general rule from the specific case.

*Woodstock Resort Corp. v. Scottsdale Ins. Co.*, 927 F. Supp. 149, 153 (D. Vt. 1996) (quoting *American Fidelity Co. v. North British & Mercantile Ins. Co.*, 124 Vt. 271, 272-73, 204 A.2d 110 (1964)). The Court approaches the instant case with this guiding principle in mind.

"An insurer's duty to defend is normally measured by comparing the terms of its policy with the underlying

allegations in the complaint against its insured." *Allstate Ins. Co. v. Vose*, 177 Vt. 412, 869 A.2d 97 (2004). The "claims in the complaint control the analysis." *Co-operative Ins. Cos. v. Woodward*, 191 Vt. 348,353, 45 A.3d 89 (2012), *see also TBH By and Through Howard v. Meyer*, 168 Vt. 149, 153, 176 A.2d 31 (1998) ("We must focus on the factual allegations in [the] complaint and not on the legal theories asserted, and unless the complaint alleges facts within the coverage of the policies, [the insurance carrier] has no duty to defend or indemnify.").

In the Policy at issue, "bodily injury" is defined as "physical injury, sickness, or disease to a person." ECF 16-2 at 10. The Policy itself explicitly excludes "[e]motional distress . . . unless it arises out of actual physical injury to some person." *Id*. There are no physical injuries alleged in the Complaint. Neither the original Complaint nor the Amended Complaint allege any sort of harmful, physical contact between the Knutsens and Karen Cegalis. The only mention of physical pain or harm is listed in the damages section: there are no *facts* alleging bodily injury. ECF 16-3 at 5. Looking at the factual allegations of the Cegalis Complaint, as Vermont law instructs, there is no bodily injury which places Cegalis' allegations under the coverage of the policy.

Courts across the country have interpreted "bodily injury," as it is used in different insurance policies, to exclude purely

11

emotional harm. *See, e.g., National Cas. Co. v. Great Southwest Fire Ins. Co.*, 833 P.2d 741, 746 (Colo 1992) ("The majority of courts that have interpreted bodily injury as it is used in the Hartford policy have determined that it covers physical injury and does not include claims for purely nonphysical or emotional harm."); *Moore v. Continental Cas. Co.*, 252 Conn. 405, 412 (2000) (collecting cases).

The Knutsens urge the Court to look beyond the Cegalis Complaint. ECF 19 at 5. While resolution of coverage is generally made on the language of the policy and the language of the complaint, Vermont courts will occasionally examine "the known facts underlying a plaintiff's complaint to understand the application of policy provisions or exclusions.'" *Garneau v. Curtis & Bedell, Inc.*, 158 Vt. 363, 366, 610 A.2d 132, 134 (1992). If the Court looks beyond the Complaint, there is still little support for a claim of harm outside purely emotional distress. In her testimony at trial, Cegalis mentions that the actions of the Knutsens have caused "tingling and numbness in my fingers" and "trouble sleeping." ECF 16-5 at 3, 5. These are the only references Cegalis makes to any physical symptoms.

Since the Vermont Supreme Court has not addressed this specific issue, this Court may consider analogous situations in other jurisdictions. Many courts have found that physical symptoms which occur as a result of emotional distress still do

not count as "bodily injury." *See, e.g.*, *D.B.C. v. Pierson*, No. 2:13-CV-00377-LSC, 2014 WL 2155017 at *4 (N.D. Ala. May 22, 2014) ("There is no indication in the policy definition of bodily injury that it covers physical injuries that arise out of mental injuries, without there first being some actual physical injury."); *Heacker v. American Family Mut. Ins. Co.*, No. 09-4270-CV-W-GAF, 2011 WL 124301 at *8 (W.D. Mo. Jan. 14, 2011) ("[T]here is no justification for interpreting ["bodily injury"] in a manner that excludes coverage for 'purely emotional distress' but provides coverage when emotional distress is accompanied by physical manifestations."); *State Farm Mut. Auto Ins. Co. v. D.L.B.*, 881 N.E.2d 665, 666 (2008) (holding that insured did not suffer bodily injury even though his emotional distress was accompanied by physical manifestation, because these physical manifestations were not the result of an impact, force, or harm); *Taylor v. Mucci*, 952 A.2d 776, 781 (Conn. 2008) (explaining that "although emotional distress might be accompanied by some physical manifestations, it [does] not follow that emotional distress constituted a type of bodily injury under the policy.") (internal quotations omitted); *Geraci v. Conte*, No. 77420, 2000 WL 1739294 at *6 (Ohio Ct. App. Nov. 22, 2000) ("Thus, appellant's physical sickness, which occurred as a result of her emotional distress, is excluded by the unambiguous terms of the policy. Therefore, we find that

appellant has suffered no bodily injury as that term is defined in the policy."); *Pratchenko v. Fuller*, 212 Wis. 2d 641, 570 N.W.2d 62 (Wis. Ct. App. 1997) (denying coverage even though insured's mental distress manifested itself in physical symptoms such as sleeplessness and loss of appetite.); *Zerr v. Erie Ins. Exchange*, 446 Pa. Super 451 (1995) (denying coverage for an insured who suffered emotional injuries which later manifested themselves in physical symptoms); *Dahlke v. State Farm Mut. Auto Ins. Co.*, 451 N.W. 2d 813, 815 (Iowa 1990) ("We think the term 'bodily injury' is clear on its face and does not include the physical manifestation of the parents' loss here.").

However, a strong contingent of courts have ruled the other way. *See, e.g.*, *Allstate Ins. Co. v. Wagner-Ellsworth*, 344 Mont. 445, 459, 188 P.3d 1042, 1051 (2008) (finding that allegations of physically-manifested emotional distress fall within bodily injury coverage in the insurance context); *Am. Motorists Ins. Co. v. S. Sec. Life Ins. Co.*, 80 F. Supp.2d 1280, 1283 (M.D. Ala. 2000) (under Florida law, allegation of physically manifested mental anguish met insurance policy's definition of "bodily injury"); *Twin City Fire Ins. Co. v. Colonial Life & Acc. Ins. Co.*, 124 F. Supp.2d 1243, 1247 (M.D. Ala. 2000) (applying South Carolina law, emotional trauma can constitute "bodily injury" unless the complaint contains no allegations of physical damages); *Gen. Star Indem. Co. v. Sch. Excess Liability*

*Fund*, 888 F. Supp. 1022, 1027 (N.D.Cal.1995) ("Physical injury resulting from emotional distress, however, constitutes 'bodily injury.'"); *State Farm Fire & Cas. Co. v. Nikitow,* 924 P.2d 1084, 1089 (Colo. App. 1995) (although the term "bodily injury" in insurance contract did not encompass purely emotional harm, coverage was available if injury was accompanied by physical manifestations such as nausea and ongoing nightmares); *Garvis v. Employers Mut. Cas. Co.*, 497 N.W.2d 254, 257 (Minn. 1993) ("emotional distress with appreciable physical manifestations can qualify as a 'bodily injury' within the meaning of the insurance policy"); *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1262 (N.J. 1992) (emotional distress resulting in headaches, stomach pains, nausea, and body pains constituted "bodily injury" under homeowner's insurance policy).

On the facts presented in this case, the Court finds no duty to defend. Given that this Court is predicting how Vermont's highest court would resolve the ambiguity, the Court first emphasizes that it is only deciding the issue in this case, and "leaving classification to others." *Woodstock Resort Corp.*, 927 F. Supp. at 153. As instructed by Vermont law, the Court has compared the terms of the policy with the underlying allegations in the Complaint and found that the Cegalis Complaint does not detail any bodily injury, much less substantial bodily injury. Even looking beyond the facts alleged

15

in the Complaint, as the Knutsens urge this Court to do, there is only a small basis for supporting a claim of bodily injury: Cegalis testified at trial to tingly fingers and trouble sleeping. These slight, physical manifestations may offer insight into the severity or extent of Cegalis' emotional harm, but they are thin facts upon which to rest a duty to defend. Since these minor symptoms all stem from her emotional distress, which is explicitly excluded from the State Farm policy, State Farm is not obligated to indemnify or defend the Knutsens in the Cegalis lawsuit.

Since the Court has found that State Farm has no duty to defend because Cegalis' harms do not constitute "bodily injury" as defined in the Policy, the Court need not address State Farm's other argument that the harm to Cegalis was intended or expected. State Farm's Motion for Summary Judgment is granted.

## Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment is **granted.**

DATED at Burlington, in the District of Vermont, this 25th day of March, 2019.

/s/ William K. Sessions III  
William K. Sessions III  
District Court Judge